1   WO

2

3

4

5

6                   IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Dish Network Corporation, a Nevada          No. CV 12-8077-PCT-JAT
    corporation; Dish Network, L.L.C., a
10  Colorado limited liability company; and     **ORDER**
    Dish Network Service, L.L.C., a Colorado
11  limited liability company,

12                   Plaintiffs,

13  v.

14  Eric Tewa, Sr., in his official capacity as
    Chief Revenue Officer of the Hopi Tribe
15  Office of Revenue Commission, an agency
    of a federally-recognized Indian tribe;
16  Lamar Keevama, in his official capacity as
    Deputy Commissioner of the Hopi Tribe
17  Office of Revenue Commission, an agency
    of a federally-recognized tribe; and Merwin
18  Kooyahoetma, in his official capacity as
    Deputy Commissioner of the Hopi Tribe
19  Office of Revenue Commission, an agency
    of a federally recognized Indian tribe,
20
                    Defendants.
21

22          Pending before the Court is Defendants' Motion to Dismiss Complaint Pursuant to

23  Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 24).  The Court now rules

24  on the Motion.

25  **I.      BACKGROUND**[1]

26          The Dish Network Corporation ("Dish Parent"), Dish Network, L.L.C. ("Dish

27  _____

28       [1]   The facts set forth in this Background section are as alleged in the Complaint
    (Doc. 1).

Provider"), and Dish Network Service, L.L.C. ("Dish Service") (collectively, the "Dish Plaintiffs") filed this action seeking declaratory and injunctive relief.  Dish Network, L.L.C., a subsidiary of Dish Network Corporation, provides Direct Broadcast Satellite television service (the "Satellite Service") to about fourteen million households across the United States, including providing such service to a small number of persons (around 900) who reside on the reservation of the Hopi Tribe.  (Doc. 1 at ¶¶ 2, 13).

The satellite programming is transmitted to Dish subscribers by a number of satellites, none of which is located on the Hopi Reservation.  (Doc. 1 at ¶ 13).  The programming is uplinked to the satellites from Dish uplink centers in Cheyenne, Wyoming and Gilbert, Arizona, among others, none of which is situated on the Reservation.  (*Id.*).  Programming networks travel to these uplink centers from various locations, none of which is on the Hopi Reservation.  (*Id.*).

Dish Network, L.L.C. provides its service pursuant to licenses issued by the Federal Communications Commission (the "FCC").   (*Id.* at ¶ 14).  When Subscribers to the Satellite Service ("Dish Subscribers") enter into a subscription agreement with Dish Network, L.L.C., they are provided a satellite dish receiver, which is usually attached to the roof of their residence and oriented toward a satellite signal, and a set top box to decode the signal, which is attached to their television set.  (*Id.* at ¶ 15).  To arrange for Satellite Service, prospective Dish Subscribers must contact Dish at one of its locations, none of which are located on the Hopi Reservation.  (*Id.*)  Likewise, Dish Subscribers submit payments for the Satellite Service to Dish Network, L.L.C. at one of its locations, none of which are located on the Hopi Reservation.  (*Id.*).

Dish Network Service, L.L.C. provides installation service for Dish Subscribers, including those located on the Hopi Reservation.  (*Id.* at ¶ 16).  Dish Network Service, LLC's only contact with Dish subscribers on the Hopi Reservation is to enter the Hopi Reservation to install the satellite dish receiver and the decoder box on the subscriber's residence.  (*Id.* at ¶ 16).  Dish Network Corporation is the holding corporation of Dish Network, L.L.C. and has no contact with or presence on the Hopi Reservation.   (*Id.* at ¶

17).

In 2009, the Hopi Tribe Office of Revenue Commission (the "Hopi Revenue Commission") informed Dish Service that it had to apply for and obtain a license to do business on the Hopi Reservation and pay an annual fee pursuant to Hopi Tribal Ordinance 17A ("Ordinance 17A").  (*Id.* at ¶ 18).  Dish Service contended that it should not need to obtain the license or pay the fee because Ordinance 17A is preempted by section 303(v) of the Communications Act of 1934, as amended, and local fees or taxes on direct-to-home satellite services are preempted by section 152 of the Communications Act of 1934, as amended.  (*Id.* at ¶ 19).[2]

Based on Dish Service's refusal to obtain the license and pay the fee, the Hopi Revenue Commission filed a lawsuit (the "Tribal Court lawsuit") against Dish Parent and Dish Service in the Hopi Tribal Court seeking an injunction requiring Dish Parent and Dish Service to obtain a business license and to pay an annual fee and damages.  (*Id.* at ¶ 20).

Dish Parent and Dish Service allege that the Hopi Tribal Court lacks subject matter jurisdiction over them pursuant to *Montana v. United States*, 450 U.S. 544 (1981). (*Id.* at ¶ 26).

The Dish Plaintiffs seek (1) a declaratory judgment that Hopi Tribal Ordinance 17A is preempted by 47 U.S.C. § 303(v) and all fees imposed under Ordinance 17A are preempted by 47 U.S.C. § 152; (2) a declaratory judgment that Ordinance 17A is invalid and inapplicable as to the Dish Plaintiffs; (3) that Defendants lack authority to lawfully apply and enforce Ordinance 17A against the Dish Plaintiffs; (4) an injunction enjoining Defendants from applying or enforcing Ordinance 17A against the Dish Plaintiffs; and (5) an injunction enjoining Defendants from continuing to prosecute the Tribal Court lawsuit in Hopi Tribal Court.  (*Id.* at ¶¶ 27-33).

---

[2]    For the purposes of this Order, section 303(v) of the Communications Act of 1934, as amended, and section 152 of the Communications Act of 1934, as amended, are referred to collectively herein as the "Communications Act."

Defendants now move to dismiss the Dish Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants argue that the Dish Plaintiffs' claims are not yet ripe because the Dish Plaintiffs have failed to exhaust their tribal court remedies and, thus, this case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendants further argue that the Complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) because preemption under the Communications Act does not apply to Indian tribes.

Simplified, the Complaint in this case essentially asks this Court to adjudicate two issues. The first is whether, under the facts of this case, the Hopi Tribal Court has adjudicative authority over the nonmember Dish Plaintiffs. The second is whether the Hopi Revenue Commission may regulate the activities of and impose taxes on the Dish Plaintiffs based on the relationship between Dish Provider and certain members of the Hopi Reservation. Defendants argue that this Court cannot answer either question until the Hopi Tribal Court has the opportunity to decide whether it has jurisdiction over the Dish Plaintiffs in the first instance.

Although Defendants characterize their challenge to the Dish Plaintiffs' failure to exhaust their administrative remedies as a lack of subject matter jurisdiction and move under Federal Rule of Civil Procedure 12(b)(1) for dismissal, Defendants' motion, in substance, is not a challenge to the Court's subject matter jurisdiction. Rather, it is clear that "whether a tribal court has adjudicative authority over nonmembers is a federal question" and this Court has subject matter jurisdiction to consider that issue. *Plains Commerce Bank v. Long Family Land and Cattle Co.*, 554 U.S. 316, 324 (2008) (internal citations omitted). Rather, Defendants' motion to dismiss for failure to exhaust tribal court remedies should be treated as an unenumerated 12(b) motion. *See Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) ("the failure to exhaust nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement, which is subject to an unenumerated motion to dismiss."). On such a motion, "the court may look

1  beyond the pleadings and decide disputed issues of fact." *Id.* at 1119-20.  Defendants

2  have the burden of raising and proving non-exhaustion of the claims. *Id.* at 1113.

3          **II.**      **WHETHER EXHAUSTION IS REQUIRED**

4          "A tribal court's jurisdiction over nonmembers of the tribe is limited.  As a matter

5  of comity, however, federal courts generally decline to entertain challenges to a tribal

6  court's jurisdiction until the tribal court has had a full opportunity to rule on its own

7  jurisdiction." *Elliott v. White Mountain Apache Tribal Court*, 566 F.3d 842, 844 (9th Cir.

8  2009), *cert. denied*, 130 S.Ct. 624 (2009); *see Nat'l Farmers Union Ins. Cos. v. Crow*

9  *Tribe of Indians*, 471 U.S. 845, 856 (1985) ("policy favors a rule that will provide the

10  forum whose jurisdiction is being challenged the first opportunity to evaluate the factual

11  and legal bases for the challenge").[3]  "A district court has no discretion to relieve a

12  _____

13       [3]  The Supreme Court in *National Farmers* explained the policy behind requiring
  exhaustion of tribal court remedies as follows:

14

15          We believe that examination should be conducted in the
      first instance in the Tribal Court itself. Our cases have often

16        recognized that Congress is committed to a policy of
      supporting tribal self-government and self-determination.

17        That policy favors a rule that will provide the forum whose
      jurisdiction is being challenged the first opportunity to

18        evaluate the factual and legal bases for the challenge.

19        Moreover, the orderly administration of justice in the federal
      court will be served by allowing a full record to be developed

20        in the Tribal Court before either the merits or any question
      concerning appropriate relief is addressed. The risks of the

21        kind of "procedural nightmare" that has allegedly developed

22        in this case will be minimized if the federal court stays its
      hand until after the Tribal Court has had a full opportunity to

23        determine its own jurisdiction and to rectify any errors it may
      have made. Exhaustion of tribal court remedies, moreover,

24        will encourage tribal courts to explain to the parties the

25        precise basis for accepting jurisdiction, and will also provide
      other courts with the benefit of their expertise in such matters

26        in the event of further judicial review.

27

28  471 U.S. at 856-857 (footnotes omitted).

litigant from the duty to exhaust tribal remedies prior to proceeding in federal court." *Allstate Indemnity Co. v. Stump*, 191 F.3d 1071, 1073 (9th Cir. 1999) (internal citation omitted).

However, the Supreme Court has recognized four exceptions to the exhaustion requirement:

> (1) when an assertion of tribal court jurisdiction is "motivated by a desire to harass or is conducted in bad faith"; (2) when the tribal court action is "patently violative of express jurisdictional prohibitions"; (3) when "exhaustion would be futile because of the lack of an adequate opportunity to challenge the [tribal] court's jurisdiction"; and (4) when it is "plain" that tribal court jurisdiction is lacking, so that the exhaustion requirement "would serve no purpose other than delay."

*Elliott*, 566 F.3d at 847 (quoting *Nevada v. Hicks,* 533 U.S. 353, 369 (2001)).  In this case, there is no suggestion that the assertion of tribal court jurisdiction is motivated by a desire to harass or conducted in bad faith or that exhaustion would be futile because of the lack of an adequate opportunity to challenge the tribal court's jurisdiction.  Rather, the Dish Plaintiffs argue that the tribal court action is "patently violative of express jurisdictional prohibitions" and it is "plain" that tribal court jurisdiction is lacking and the exhaustion requirement "would serve no purpose other than delay."

### A.    Whether the Tribal Court Action is "Patently Violative of Express Jurisdictional Prohibitions"

The Dish Plaintiffs argue that the Tribal Court action is patently violative of express jurisdictional prohibitions because the Communications Act expressly reserves regulatory jurisdiction to the Federal Communications Commission (the "FCC") and Ordinance 17A is an attempt to regulate non-member activity on Indian land, which is preempted by the Communications Act.

Ordinance 17A[4] would require the Dish Plaintiffs, among other things, to obtain a license, post a bond, pay licensing fees, pay a gross receipts tax, pay other fees or taxes as deemed appropriate by the Hopi Tribal Council, consent to the jurisdiction of Hopi Tribal Courts, make disclosure statements and translate such statements orally into the "appropriate language," format customer bills in a specified manner, stop provision of Satellite services if the Chief Revenue Officer finds that Dish Provider is not "adequately serving the economic needs of the community," and attend the Hopi Tribe's public meetings at the request of a "tribal official designated by the governing body" to respond to customer inquiries.

The Dish Plaintiffs argue that these regulations and taxation are preempted by 47 U.S.C.A. section 303(v) and 47 U.S.C.A. section 152 note.  47 U.S.C.A. section 303 provides, in relevant part,

> Except as otherwise provided in this chapter, the Commission from time to time, as public convenience, interest, or necessity requires, shall -- . . . Have exclusive jurisdiction to regulate the provision of direct-to-home satellite services. As used in this subsection, the term "direct-to-home satellite services" means the distribution or broadcasting of programming or services by satellite directly

---

[4]   The Court notes that the Dish Plaintiffs argue that Ordinance 17A does not apply to them because Ordinance 17A defines "Reservation Business" as "any business that engages at a fixed location within the jurisdiction of the Hopi Reservation in the sale or purchase of goods or services or consumer credit transactions with Indians and is not a financial institution operating under the laws of the United States." § 17.1.5(k).  The Dish Plaintiffs argue that it does not engage in business at a fixed location on the Hopi Reservation because it has absolutely no presence on the Hopi Reservation with the exception of Dish Service entering the Reservation solely to install the satellite dish receiver and the decoder box at the subscriber's residence.  In Response, Defendants argue that each subscriber's residence is the fixed location at which the Dish Plaintiffs are engaged in "Reservation Business."

The Court does not at this time decide this argument, because, as discussed more fully below, the Tribal Court will have the opportunity to interpret its own statute in the first instance.

to the subscriber's premises without the use of ground receiving or distribution equipment, except at the subscriber's premises or in the uplink process to the satellite.

47 U.S.C.A. § 303(v).

Further, 47 U.S.C.A. section 152 provides, in relevant part,

**"(a) Preemption.**--A provider of direct-to-home satellite service shall be exempt from the collection or remittance, or both, of any tax or fee imposed by any local taxing jurisdiction on direct-to-home satellite service.

**"(b) Definitions.**--For the purposes of this section--

**"(1) Direct-to-home satellite service.**--The term 'direct-to-home satellite service' means only programming transmitted or broadcast by satellite directly to the subscribers' premises without the use of ground receiving or distribution equipment, except at the subscribers' premises or in the uplink process to the satellite.

**"(2) Provider of direct-to-home satellite service.**--For purposes of this section, a 'provider of direct-to-home satellite service' means a person who transmits, broadcasts, sells, or distributes direct-to-home satellite service.

**"(3) Local taxing jurisdiction.**--The term 'local taxing jurisdiction' means any municipality, city, county, township, parish, transportation district, or assessment jurisdiction, or any other local jurisdiction in the territorial jurisdiction of the United States with the authority to impose a tax or fee, but does not include a State.

**"(4) State.**--The term 'State' means any of the several States, the District of Columbia, or any territory or possession of the United States.

**"(5) Tax or fee.**--The terms 'tax' and 'fee' mean any local sales tax, local use tax, local intangible tax, local income tax, business license tax, utility tax, privilege tax, gross receipts tax, excise tax, franchise fees, local telecommunications tax, or any other tax, license, or fee that is imposed for the privilege of doing business, regulating, or raising revenue for a local taxing jurisdiction.

**"(c) Preservation of State authority.**--This section shall not be construed to prevent taxation of a provider of direct-to-home satellite service by a State or to prevent a local taxing jurisdiction from receiving revenue derived from a tax or fee

- 8 -

1    imposed and collected by a State.

2    47 U.S.C.A. § 152 note.

3    The Dish Plaintiffs argue that Ordinance 17A plainly attempts to regulate direct-

4    to-home satellite services and that this regulation is preempted by 47 U.S.C.A. section

5    303(v), which gives exclusive jurisdiction over the regulation of direct-to-home satellite

6    services to the FCC.   The Dish Plaintiffs further argue that, because a Tribe's

7    adjudicatory jurisdiction cannot exceed its regulatory jurisdiction, the tribal court action

8    is patently violative of express jurisdictional prohibitions.  The Dish Plaintiffs also argue

9    that the Hopi Reservation is plainly "any other local jurisdiction in the territorial

10   jurisdiction of the United States with the authority to impose a tax or fee" within the

11   definition of "local taxing jurisdiction" in 47 U.S.C.A. § 152 note, and, thus, is without

12   authority to impose taxes on the Dish Plaintiffs.

13   In response, Defendants argue that the Communications Act does not apply to

14   Indian tribes.  Defendants also argue that, even if the Communications Act does apply to

15   Indian Tribes, the Hopi Tribe may still impose a tax on the Dish Plaintiffs because 47

16   U.S.C.A. §152 note does not prevent taxation by the Hopi Tribe on the Dish Plaintiffs.[5]

17   First, it is true that "a tribe's adjudicative jurisdiction does not exceed its

18   legislative jurisdiction." *Plains Commerce Bank v. Long Family Land and Cattle Co.*,

19   554 U.S. 316, 329 (2008).  The Dish Plaintiffs argue that, because it is clear that the

20   Communications Act preempts the tribe's legislative jurisdiction, the Tribal Court action

21   is patently violative of express jurisdictional prohibitions.

22   The Court disagrees.  The Dish Plaintiffs appear to read a broader rule into the

23   "patently violative of express jurisdictional prohibitions" exception than has been applied

24   by the United States Supreme Court or the Ninth Circuit Court of Appeals.  Rather, it

25   _____

26   [5]  Defendants only address the enforceability of a tax should the Court find that
     the Communications Act applies to Indian Tribes.  Defendants do not address the
27   enforceability of the remainder of Ordinance 17A on the Dish Plaintiffs should the Court
28   find that the Communications Act applies to Indian tribes.

1    appears that this exception only applies when the legislation at issue speaks directly to a

2    court's *adjudicatory* jurisdiction over a dispute.

3          For instance, in *El Paso Natural Gas Co. v. Neztsosie*, which the Dish Plaintiffs

4    cite in support of their argument, one of the issues that the Supreme Court addressed was

5    whether exhaustion was required when two members of the Navajo Nation sued El Paso

6    Natural Gas Corporation and one of its subsidiaries, Rare Metal Corporation, claiming

7    that El Paso and Rare Mineral operated open uranium mines on the Reservation, which

8    allegedly contaminated the members' drinking water and caused them injuries.  526 U.S.

9    473, 476 (1999).   The Court examined what it deemed an "unusual preemption

10   provision" in the Price-Anderson Act, which transformed "any public liability action

11   arising out of or resulting from a nuclear accident" into a federal action.  *Id.* at 484 (citing

12   42 U.S.C. § 2210(n)(2)).

13         Because of this transformation, the Act not only gave a district court original

14   jurisdiction over such a claim, but provided for removal to federal court as of right if a

15   putative Price-Anderson action was brought in state court.  *Id.*   In light of these unique

16   jurisdictional provisions, the Court then had to decide whether deference to the tribal

17   court on the issue of exhaustion was necessary where the same deference would not be

18   accorded to the state court.  *Id.* at 485.  The Court answered in the negative, finding that

19   "[a]ny generalized sense of comity toward nonfederal courts is obviously displaced by

20   the provisions for preemption and removal from state courts, which are thus accorded

21   neither jot nor tittle of deference."  *Id.* at 486.

22         Accordingly, the Court found, where the legislation contained an express

23   preference for federal court adjudication notwithstanding the normal comity given to

24   state court decisions, such comity would also not be necessary with regard to tribal court

25   exhaustion of the jurisdictional question.  Importantly, however, the Court recognized

26   that this situation was limited to such facts and expressly conceded that normally

27   exhaustion would be necessary, even where defendants in a tribal court action raised a

28   federal preemption defense:

1

2
> This is not to say that the existence of a federal preemption
3
> defense in the more usual sense would affect the logic of
> tribal exhaustion. Under normal circumstances, tribal courts,
4
> like state courts, can and do decide questions of federal law,
> and there is no reason to think that questions of federal
5
> preemption are any different.

6
*Id.* at 486 n.7 (citing *Santa Clara Pueblo v. Martinez,* 436 U.S. 49 (1978)).

7
In this case, the Dish Plaintiffs have pointed to no provision in the

8
Communications Act that expressly reserves adjudicatory jurisdiction to any claims that

9
*may relate* to the Communications Act to federal courts.  In light of the *Neztsosie* Court's

10
caveat that a tribal court can normally decide whether its jurisdiction is preempted by

11
federal legislation in the first instance and the policies behind requiring tribal court

12
exhaustion, to allow the tribal court to rule on its jurisdiction in the first instance, the

13
Court finds that the "patently violative of jurisdictional prohibitions" exception to

14
exhaustion does not apply in this case.[6]

15
      **B.**    **Whether it is Plain that Tribal Court Jurisdiction is Lacking and**
**the Exhaustion Requirement would Serve No Purpose other**
16
**than Delay**

17
To determine whether it is "plain" that tribal jurisdiction is lacking, the Court

18
determines whether jurisdiction is "colorable" or "plausible."  *Allstate*, 191 F.3d at 1075.

19
"If jurisdiction is 'colorable' or 'plausible,' then the exception does not apply and

20
exhaustion of tribal court remedies is required."  *Elliott*, 566 F.3d at 848 (internal

21
quotation marks and citation omitted).

22
Defendants argue that they have made a colorable argument that the tribal court

23
has jurisdiction over the Dish Plaintiffs because, under *Montana*, 450 U.S. at 544, (1) a

24
tribe may regulate the conduct of non-members relating to a consensual relationship

25
between the nonmember and the tribe or its members and (2) a tribe may regulate

26

27
    [6]  This analysis solely addresses whether tribal court *exhaustion* is required in this

28
case and is in no way intended to decide or comment upon the merits of whether the
Communications Act preempts tribal court jurisdiction in this case.

nonmember conduct that threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe. Defendants argue that the facts of this case fall within both of the *Montana* exceptions and, thus, the tribe has the power to regulate the activities of the Dish Plaintiffs. Accordingly, Defendants argue, that because "where tribes possess authority to regulate the activities of non-members, civil jurisdiction over disputes arising out of such activities presumptively lies in the tribal courts," *Strate v. A-1 Contractors*, 520 U.S. 438, 453 (1997), the Tribal Court has jurisdiction over the Dish Plaintiffs.

In response, the Dish Plaintiffs argue that neither *Montana* exception applies to this case. The Dish Plaintiffs further argue that, even if a *Montana* exception applied to this case, because Congress has the ability to limit the jurisdiction of the Tribal Court, and has expressly done so through the Communications Act, 47 U.S.C.A. section 303(v) and 47 U.S.C.A. section 152, the Tribal Court lacks jurisdiction over this case. The Dish Plaintiffs further argue that, even though the Communications Act does not expressly apply to Indian tribes, general federal statutes are presumed to apply to Indian tribes, and thus, the Communications Act divests the Hopi Tribe of both regulatory and adjudicatory authority over the Dish Plaintiffs.

It is important to note that this Order is solely limited to deciding the issue of whether Tribal Court exhaustion is required in this case. For the following reasons, the Court finds that Tribal Court exhaustion on the issue of jurisdiction is required in this case. Thus, the Court again notes that this opinion is not intended to decide the merits of the issue of whether the Communications Act preempts tribal regulatory or adjudicatory authority over the Dish Plaintiffs.

**1.     Whether Tribal Court Jurisdiction is Colorable or Plausible**

**a.     The *Montana* Rule and its Progeny**

In analyzing whether a tribe can exercise regulatory authority over a non-member, a Court must always begin with "the general proposition that the inherent sovereign

- 12 -

powers of an Indian tribe do not extend to the activities of non-members of the tribe." *Montana*, 544 U.S. at 565.  However, "Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands." *Id.*  First, "[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Id.* (internal citations omitted).  Second, "[a] tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id.* at 566 (internal citations omitted).  However, outside of these two exceptions, "the tribes' inherent sovereignty does not give them jurisdiction to regulate the activities of nonmembers." *Philip Morris USA, Inc. v. King Mountain Tobacco Co., Inc.*, 569 F.3d 932, 938 (9th Cir. 2009) (internal citation omitted).

### b.   Whether Tribal Court Jurisdiction is Colorable or Plausible under the *Montana* Exceptions

With regard to the first *Montana* exception, in this case, Defendants argue that the Dish Plaintiffs entered into consensual relationships with members of the Hopi Tribe, through contracts governing Dish's provision of satellite television to those members. Indeed, in *Big Horn Electric Cooperative, Inc. v. Adams*, 219 F.3d 944 (9th Cir. 2000), the Ninth Circuit Court of Appeals found that an almost identical relationship to the relationship between nonmember Dish Provider and certain members of the Hopi Tribe gave rise to a consensual relationship.  Specifically, in *Big Horn*, Big Horn, a nonmember company "entered into contracts with tribal members for the provision of electrical services."  219 F.3d at 951.  The Ninth Circuit Court of Appeals found that "Big Horn's voluntary provision of electrical services on the Reservation did create a consensual relationship." *Id.* (internal citation omitted).  As in *Big Horn*, in this case, Dish Provider entered into contracts with tribal members for the provision of satellite television

services,[7] which gave rise to a consensual relationship between Dish Provider and members of the Hopi reservation.

Once the Court finds the required consensual relationship, for the first *Montana* exception to apply, there must also be some nexus between the regulation sought to be imposed on the nonmember and the consensual relationship. *Philip Morris USA, Inc.*, 569 F.3d at 942 ("*Atkinson* teaches that under the first *Montana* exception, a tribe has authority to tax a nonmember where the tax has a nexus to the 'consensual relationship.'") (citing *Atkinson Trading Co. v. Shirley,* 532 U.S. 645 (2001)).   Likewise, "a tribal court has jurisdiction over a nonmember only where the claim has a nexus to the consensual relationship between the nonmember and the disputed commercial contacts with the tribe." *Id.* at 942.

In this case, Defendants have made a plausible, colorable argument, for the purposes of Tribal Court exhaustion, that there is nexus between the regulations sought to be imposed on the Dish Plaintiffs and the consensual relationship between Dish Provider[8] and the Hopi tribal members.[9]

---

[7]   Although Dish argues that Defendants have failed to *prove* that it entered into contracts with any tribal members for the provision of satellite services, Dish does not deny that it did enter into such contracts.  Further, in its Complaint, Dish admits that it provides Satellite service to about 900 residents on the Hopi Reservation.  Doc. 1 at ¶ 13.  While the Court acknowledges that Defendants have not shown that any of those 900 residents are actually members of the Hopi Tribe, Dish does not argue or show that those 900 residents are not members of the Hopi Tribe.  Accordingly, for the purposes of this Order, the Court assumes that Dish has entered into consensual relationships with some members of the Hopi tribe for the provision of satellite services on the Hopi Reservation.

[8]   The Court does not have enough information regarding the relationships between the Dish Plaintiffs (Dish Provider, Dish Servicer, and Dish Parent) or the nature of the contract entered into between Dish Provider and the tribal members to determine if the tribal court's jurisdiction is plausible as to Dish Parent and Dish Servicer.  However, in light of the rest of the Court's analysis, the Court finds that this issue can properly be addressed in the first instance by the Tribal Court in its jurisdictional analysis.

[9]   Defendants have failed to make any plausible or colorable argument that the second *Montana* exception is applicable to this case.  "[U]nless the drain of the

- 14 -

1

**c.     The Effect of a Preemption Defense on the Colorable/Plausible Analysis**

2

3          The Dish Plaintiffs argue that, regardless of whether one of the *Montana*

4   exceptions applies, the Tribal Court plainly lacks jurisdiction because the regulations and

5   taxation contained in Ordinance 17A are preempted by 47 U.S.C.A. section 303(v) and

6   47 U.S.C.A. section 152.   The Dish Plaintiffs are correct that Congress can divest the

7   tribe of any regulatory or adjudicatory authority over nonmembers even when one of the

8   *Montana* exceptions applies.  *See, e.g.*, William C. Canby, Jr., *American Indian Law in a*

9   *Nutshell* 310 (5th ed. 2009) ("The federal power to regulate Indian affairs is plenary; it is

10  limited only by the constitutional restraints applicable to all federal activity.   In the

11  exercise of this power, the federal government may wholly preempt the regulatory power

12  of both the states and the tribes.").

13         Defendants argue that the Communications Act does not apply to Indian tribes.

14  The Dish Plaintiffs point to no provision in the Communications Act expressly stating the

15  intention of Congress that the Communications Act should apply to Indian tribes.

16  However, a federal statute of general applicability that is silent on the issue of

17  applicability to Indian tribes applies to Indian tribes unless

18                      (1) the law touches exclusive rights of self-governance in
                    purely intramural matters; (2) the application of the law to the
19                  tribe would abrogate rights guaranteed by Indian treaties; or
                    (3) there is proof by legislative history or some other means
20                  that Congress intended the law not to apply to Indians on their
                    reservations.

21

22  *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113, 1119 (9th Cir. 1985) (internal

23  quotations and citation omitted).   Accordingly, to determine whether the Tribal Court's

24  nonmember's conduct upon tribal services and resources is so severe that it actually

25  'imperils' the political integrity of the Indian tribe," the second *Montana* exception does

26  not apply.   *Burlington Northern Santa Fe Railroad Co. v. The Assiniboine and Sioux*

27  *Tribes of the Fort Peck Reservation*, 323 F.3d 767, 768 n.15 (9th Cir. 2003).  Defendants

28  have made no showing, plausible or otherwise, that the Dish Plaintiffs conduct in this
   case is a severe drain on tribal services and resources such that it imperils the political
   integrity of the Indian tribe.

1    regulatory and adjudicatory authority is preempted by the Communications Act, a Court

2    must first determine whether the Communications Act, a law of general applicability,

3    applies to Indian tribes.  This requires the Court to analyze the test set forth in *Donovan*.

4    The Dish Plaintiffs make a plausible argument[10] that none of the exceptions set forth in

5    *Donovan* apply to the Communications Act and, thus, the preemption provisions set forth

6    in the Communications Act must apply to the Hopi Tribe in this case.[11]

7            In light of the necessity of applying the *Donovan* test to determine whether the

8    Tribal Court has adjudicatory jurisdiction in this case, "the existence and extent of a tribal

9    court's jurisdiction will require a careful examination of tribal sovereignty, the extent to

10   which that sovereignty has been altered, divested, or diminished, as well as a detailed

11   study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere,

12   and administrative or judicial decisions."  *Neztososie*, 526 U.S. at 483-84.   In such

13   situations, comity requires exhaustion of Tribal Court remedies "because Congress is

14   committed to a policy of supporting tribal self-government which favors a rule that will

15   provide the forum whose jurisdiction is being challenged the first opportunity to evaluate

16   the factual and legal bases for the challenge."  *Id.* at 484 (quoting *National Farmers*, 471

17   U.S. at 856).   Accordingly, in this case, the Court finds that comity requires the Hopi

18   Tribal Court be afforded the opportunity to evaluate the factual and legal bases for the

19   challenges to its jurisdiction in the first instance and, thus, exhaustion of tribal court

20

21   _____

22          [10]    As such, the Dish Plaintiffs have stated a claim upon which relief can be
     granted in their Complaint and Defendants Motion to Dismiss pursuant to Federal Rule of
23   Civil Procedure 12(b)(6) is denied.

24          [11]  In fact, whether the Communications Act would be found to apply to Indian
25   tribes has been the subject of considerable debate.  *See, e.g.*, John C. Miller and
     Christopher P. Guzelian, *A Spectrum Revolution: Deploying Ultrawideband Technology
26   on Native American Lands*, 11 COMMLAW CONSPECTUS 277 (2003); Jennifer L. King,
27   *Increasing Telephone Penetration Rates and Promoting Economic Development on
     Tribal Lands: A Proposal to Solve the Tribal and State Jurisdictional Problems*, 53 FED.
28   COMM. L.J. 137 (Dec. 2000).

1    remedies is required.[12]

2    **IV.    CONCLUSION**

3            When the Court determines that exhaustion is appropriate, it is in the Court's

4    discretion to either dismiss the case or stay the action while tribal court remedies are

5    exhausted.  *See Atwood v. Fort Peck Tribal Court Assiniboine and Sioux Tribes*, 513 F.3d

6    943, 948 (9th Cir. 2008).  Exercising this discretion, the Court will dismiss this case

7    without prejudice to Plaintiffs re-filing once they have exhausted their tribal court

8    remedies.

---

9
10          [12]    The Court notes that the Dish Plaintiffs argue that there is an additional
     exception to tribal court exhaustion, which was carved out by the United States Supreme
11   Court in *Nevada v. Hicks*, 533 U.S. 353, 369 (2001).  In *Hicks*, the Supreme Court
     conducted a merits analysis as to whether the tribal court lacked jurisdiction over state
12   officers for causes of action relating to their performance of official duties.  *Id.* at 369.

13          After finding that the tribal court did lack jurisdiction over such causes of action,
14   the Court next addressed whether the petitioners "were required to exhaust their
     jurisdictional claims in Tribal Court before bringing them in Federal District Court."  *Id.*
15   The *Hicks* Court found that three of the exceptions to exhaustion (bad faith, patently
16   violative of express jurisdictional prohibitions, and futility) did not apply.  The Court
     then turned to the final exception ("when . . . it is plain that no federal grant provides for
17   tribal governance of nonmembers' conduct on land covered by *Montana*'s main rule, so
18   the exhaustion requirements would serve no purpose other than delay") and stated that
     such exception "too is technically inapplicable."  *Id.* (internal quotations and citations
19   omitted).  Nonetheless, the *Hicks* Court found that the "reasoning behind" the fourth
20   exception: "where it is clear that the tribal court lacks jurisdiction" and "tribal court
     exhaustion would serve no purpose other than delay" applied because the court had
21   already determined that the tribal court lacked jurisdiction over state officials for causes
22   of action relating to their performance of official duties, and, thus, exhaustion before the
     tribal court was unnecessary.

23
24          First, it is not clear if the *Hicks* Court intended to carve out a fifth exception to the
     exhaustion requirement.  Second, even if that was the intention of the *Hicks* Court, if this
25   Court were to find that tribal court exhaustion were not required in this case because this
26   Court is capable of first conducting a merits analysis of the tribal court's jurisdiction and
     thus, requiring the tribal court to do so "would serve no purpose other than delay," such a
27   holding would essentially eviscerate the comity doctrine and the reasoning behind it.
     Accordingly, because, unlike in *Hicks*, it is not clear that the tribal court lacks jurisdiction
28   in this case, this "exception" to the exhaustion requirement is likewise inapplicable.

Based on the foregoing,

**IT IS ORDERED** that Defendants' Motion to Dismiss Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 24) is granted in part and denied in part as follows:

Defendants' Motion to Dismiss Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(6) is denied.

Defendants' unenumerated 12(b) Motion to Dismiss for Failure to Exhaust Tribal Court Remedies is granted.  This case is dismissed without prejudice to Plaintiffs re-filing once they have exhausted their tribal court remedies as set forth herein.  The Clerk of the Court shall close this case and enter judgment accordingly.

Dated this 1st day of November, 2012.

_____
James A. Teilborg
United States District Judge